UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL ANGELO BURNETT,

           Plaintiff,           Case No. 1:20-cv-1161

v.           Honorable Robert J. Jonker

UNKNOWN WIBORN et al.,

           Defendants.
_____/

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $400.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $400.00 filing fees in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are

meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that they were frivolous, malicious and/or failed to state a claim. *See, Burnett v. Marschke et al.*, No. 2:09-cv-225 (W.D. Mich. Feb. 5, 2010); *Burnett v. Hofbauer et al.*, No. 2:09-cv-192 (W.D. Mich. Dec. 2, 2009);

*Burnett v. Caruso, et al.,* No. 2:09-cv-180 (W.D. Mich. Oct. 8, 2009); *Burnett v. Hill, et al.,* No. 2:09-cv-39 (W.D. Mich. Mar. 6, 2009); *Burnett v. Caruso, et al.,* No. 2:08-cv-168 (W.D. Mich. Jan. 5, 2009). In addition, Plaintiff has been denied leave to proceed *in forma pauperis* under the three-strikes rule in dozens of cases. *See, e.g., Burnett v. Kipela et al.*, No. 2:20-cv-105 (W.D. Mich. Oct. 18, 2010) (ECF Nos. 3-4).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797-98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which

3

the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC), and the actions about which he complains purportedly occurred at that facility. He sues the following IBC officials: Correctional Officer Unknown Wilborn; Assistant Deputy Warden J. McBride; and unnumbered Jane Does (Unknown Part(y)(ies)).

The instant complaint is one of three new complaints filed by Plaintiff within little more than two weeks. The three complaints are the first filed in this Court by Plaintiff in 10 years. By late 2010, Plaintiff had accumulated all five of his strikes and had been denied pauper status in two dozen additional cases in the Western District of Michigan.

In the first of his three 2020 complaints (No. 1:20-cv-1116), Plaintiff alleged that for 15 years, at least 5 times per week, Defendants Bolton and Lane used the "Safety Systems" at IBC to "release[] their excreted waste ("feces") and urine in [Plaintiff's] mouth." (1:20-cv-1116, ECF No. 3, PageID.13; *see also* ECF No. 1, PageID.2-3.) Plaintiff alleged that "Defendants Bolton and Lane can do just about anything to [him] physically while on the prison Safety Systems at Bellamy." (1:20-cv-1116, ECF No. 1, PageID.3.) He stated that Defendants Bolton and Lane told him "[t]hat they and their staff were not going to stop excreting waste and urine into my mouth until I am dead. . . . So, I might as well go ahead and kill myself." (*Id.*, PageID.2.) Plaintiff alleged that he suffered nausea and chest pain, because the waste and urine aggravated his acid-reflux condition.

Plaintiff admitted that he suffered from paranoia and schizophrenia, and he stated that Defendants laughed at him and told him that he would never be believed because of his

4

diagnoses. Plaintiff alleged that he complained to his psychologist about Defendants using the "Safety Systems" to perpetrate the assaults, but when the psychologist asked Defendants what the "Safety Systems" were, Defendants denied that such system(s) existed. Due to Defendants' denials of the existence of the "Safety Systems," Plaintiff's psychiatric medications were increased over his objections. Plaintiff argued that Defendants' denial of the existence of "Safety Systems" is refuted by MDOC Policy Directive (PD) 04.04.100, which is entitled "Custody, Security, and Safety Systems." He alleged that he was in imminent danger from Defendants' continuing use of the "Safety Systems" to cause Plaintiff to ingest feces and urine.

The Court initially and improvidently granted leave to proceed *in forma pauperis* in the first case, No. 1:20-cv-1116. The Court has since vacated that order and denied pauper status under the three-strikes rule.

However, emboldened by the Court's grant of pauper status in that case, Plaintiff promptly filed two additional actions. In the instant case, his second 2020 action, Plaintiff alleges that, on November 29, 2019, Defendants Wilborn and Unknown Part(y)(ies) used the Safety Systems to deliver Defendant Wilborn's feces and urine directly into Plaintiff's mouth. He alleges that Defendant Wiborn told him that they were doing it in retaliation for Plaintiff having filed a lawsuit against the warden.[1]

---

[1] As previously noted, Plaintiff has not filed an action in this Court against anyone since 2010. He has, however, filed several lawsuits in the Eastern District of Michigan between 2010 and the present. *See Burnett v. Jenkins et al.*, 2:19-cv-13513 (E.D. Mich.) (alleging that officials at the Macomb Correctional Facility (MRF) and ICF (including ICF Warden Macauley) delivered feces and urine into his mouth by way of the prison Safety Systems); *Burnett v. Walsh et al.*, No. 2:18-cv-11063 (E.D. Mich.) (alleging that officials at MRF are using the MDOC Safety Systems to deliver feces and other bodily fluids into his mouth and are forcibly ejaculating into his mouth); *Burnett v. Eelbode et al.*, No. 5:19-cv-12471 (E.D. Mich.) (alleging that officials at MRF put feces into his mouth at least three times a week). Case No. 2:18-cv-11063 was dismissed as frivolous on April 26, 2018. (2:18-cv-11063, ECF No. 11, PageID.58-60.) Arguably, Plaintiff's claim of protected conduct refers to the complaint filed in Case No. 2:19-cv-13513, in which he names Defendant Macauley.

5

Plaintiff's allegations are "fantastic or delusional and rise to the level of irrational or wholly incredible." *Rittner*, 290 F. App'x at 79.  Plaintiff's reference to PD 04.04.100 does not support his fantastic allegation that there exists a special system at IBC (or any other MDOC facility) that allows officials to both communicate and deliver feces and urine directly into Plaintiff's mouth.  The referenced policy discusses the specifics of custody, security, and safety practices and features at IBC.  The text of the policy is exempted from public disclosure, because it would reveal too much information about custody and security operations at the prison.  *See* MDOC PD 04.04.100, https://www.michigan.gov/corrections/0,4551,7-119-1441_44369-158561--,00.html.  The simple title of the policy, however, is obvious in its meaning, and it provides no factual support for the existence of some quasi-magical system that could perform the actions alleged by Plaintiff.  The Court therefore concludes that Plaintiff's allegations of imminent danger are irrational and clearly baseless, and, as such, they do not support a conclusion that Plaintiff is in imminent danger of serious physical injury within the meaning of § 1915(g).  *See Vandiver*, 727 F.3d at 585; *Rittner*, 290 F. App'x at 79.

Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action.  Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $400.00.  When Plaintiff pays his filing fees, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).  If Plaintiff does not pay the filing fees within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $400.00 filing fees.

Dated:     December 18, 2020              /s/ Robert J. Jonker
                                                                            ROBERT J. JONKER
                                                                            CHIEF UNITED STATES DISTRICT JUDGE

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**